## KEPPELMANN v. UNITED STATES.

(Circuit Court, S. D. New York. May 31, 1902.)

### No. 3,158.

**1. CUSTOMS DUTIES—SCHEDULE A—LAKES—ALIZARINE COLORS—FREE LIST.**

A lake pigment, composed of 42.20 per cent. alizarine and 56.80 aluminum oxide (hydrated), which is classed by the government chemist as an "alizarine color," comes within Tariff Act 1894, par. 368, providing for the free entry of alizarine colors, and is not subject to duty under section 48, providing for a duty on all paints, lakes, etc., not specially provided for in the act.

Appeal by A. Keppelmann from a decision of the board of United States general appraisers, which affirmed the decision of the collector of customs at the port of New York.

The following is the opinion of the board in the case appealed:

We find as matter of fact: That the article in question, which is described in the invoices, Nos. 14,245 and 18,374, respectively, as "one cask alizarine lake 192," and as "one cask alizarine color," and which were returned by the appraiser as "lake, 25 per cent.," is of the class of pigments which have been long known in commerce as "lakes," and, as appears from the chemist's report, is composed of alizarine, 42.20 per cent., aluminum oxide (hydrated), 56.80 per cent.,—100 per cent., and is used extensively in painting, printing, and imparting color to inks, varnishes, and other articles. It was assessed for duty at 25 per cent. ad valorem, under the provision for "lakes" in paragraph 48, Act Aug. 28, 1894, and is claimed to be exempt from duty as an alizarine color, under paragraph 368 of said act. Although the term "colors" is quite commonly applied to dyes, paints, and the various pigments, including lakes, and also to some printing inks, and to coloring matters generally, it is nevertheless true that dyes, paints, lakes (the pigments proper), and printing inks are

not only more or less differently constituted the one from the other, but have different uses and methods of application in the arts, and have distinct designations in commerce and in common speech, and have had from time immemorial. They have also been distinctly differentiated in our recent tariff acts. Thus the act of 1890 (paragraph 61) specifically provided for "paints and colors, lakes, crayons," etc. Likewise the tariff act of 1894 provided (paragraph 48) for "all other paints, colors, and pigments, * * * including all colors in tubes, lakes, crayons, smalts and frostings," and the present tariff act (paragraph 58) also provides for "all paints, colors, pigments, lakes, crayons, smalts and frostings." These acts likewise make separate dutiable provision for "all coal tar colors or dyes," or for "coal tar dyes or colors," as well as for inks of all kinds and ink powders. Alizarine is known pre-eminently as a dye, its use in colors proper, or pigments, lakes, and inks, being comparatively insignificant, yet it is used more or less in all these products, and is not at all limited to lakes, in which use it has, within recent years, superseded madder; and although madder and its extracts were exempt from duty under our tariff acts, neither lakes nor the other products mentioned were held to be entitled to admission free of duty on that account. As appears from G. A. 4497, the Standard Dictionary defines "lakes" as "A pigment made by combining, as by precipitation, some animal (as cochineal) or vegetable (as madder) coloring matter with a metallic oxid, usually that of aluminum or tin." Hurst, in his work entitled "Painters' Colors, Oils, and Varnishes," edition of 1896, a recognized authority, says (at page 259): "Lakes form a class of pigments of considerable use in painting. They were among the pigments used by the early Italian painters, from whom their use has descended to the present time. * * * Lakes may be defined to be compounds of an organic coloring principle with a metallic body. The organic coloring principle may be obtained, as it was in the early times, and until very recent years, from natural coloring matters, such as lac, cochineal, Persian berries, fustic, Brazil wood, sapan wood, etc., or it may be derived from the coal tar colors, a source which has only lately come into prominence for lake making, but which promises in the future to supplant the natural coloring matters for this purpose, as they very nearly have done for dyeing textile fabrics." While, as is thus seen, the coloring principle in lakes is by no means limited to alizarine, and includes not only various vegetable and animal coloring substances, but also different artificial coloring matters, other than alizarine, derived from coal tar and otherwise, it is also true that other pigments, colors, paints, and inks owe their coloring quality to, or are tinted with, eosin and various other aniline and other coal tar coloring products. The presence of hydrated aluminum oxide as the preponderating constituent in the article here in question deprives it of the character alike of "coal tar colors or dyes" and of "alizarine colors or dyes," and would remove it both from the dutiable and free list provisions for such articles in the act of 1894, and remit it to paragraph 48 of that act, even though they were not therein specifically provided for, as they are, as "lakes"; and this provision unquestionably applies to all lakes, whether their coloring principle consists of artificial or coal tar alizarine, cochineal, Persian berries, fustic, Brazil wood, or other substances, whether animal, vegetable, mineral, or otherwise. This view accords with the recent decision of the United States circuit court of appeals for the Second circuit in the cases of Farbenfabriken of Elberfeld & Co. v. U. S., 42 C. C. A. 525, 102 Fed. 603, wherein it was held, in effect, that the term alizarine or artificial alizarine, as used in the tariff acts of 1894 and 1897, has acquired a definite, fixed meaning, by which it is limited to such dye stuffs as are derived from anthracine.

The protests are overruled, and the assessment of duty affirmed in each case.

Albert Comstock, for importers.
Charles D. Baker, Asst. U. S. Atty.

LACOMBE, Circuit Judge (orally). This article is concededly a lake, and it seems equally plain upon the proofs that it is also an alizarine color. The government chemist testified that it is a characteristic alizarine color, and that a group or list of alizarine colors

would be incomplete if alizarine lakes were omitted from them. It would therefore seem to be more appropriately included in the enumeration of paragraph 368, which is not qualified with the words "not specially provided for in this act," as is the paragraph 48, which enumerates generally paints, colors, pigments, lakes, etc.

The decision of the board is reversed.